IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PIERRE STEWARD, | ) | CASE NO. 1:19CV170 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE SOLOMON OLIVER, JR |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Pierre Steward ("Steward"), proceeding pro se, seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Doc. 1. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).

For the reasons stated below, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

**I. Procedural History**

Steward protectively filed applications for SSI and DIB in December 2015 and January 2016, respectively, alleging a disability onset date of December 31, 2013. Tr. 18, 258, 260. He alleged disability based on back problems. Tr. 263. After denials by the state agency initially (Tr. 108, 123) and on reconsideration (Tr. 152, 153), Steward requested an administrative hearing. Tr. 167. A hearing was held before an Administrative Law Judge ("ALJ") on July 11, 2017. Tr. 38-82. In his February 28, 2018, decision (Tr. 18-33), the ALJ determined that there

1

are jobs that exist in significant numbers in the national economy that Steward can perform, i.e., he is not disabled. Tr. 31-32. Steward requested review of the ALJ's decision by the Appeals Council (Tr. 204) and, on December 28, 2018, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-3.

## II. Evidence

### A. Personal and Vocational Evidence

Steward was born in 1979 and was 34 years old on his alleged onset date. Tr. 31. He has a high school education and was in special education classes throughout his schooling. Tr. 49. He previously performed work as a parking lot attendant and baling machine operator. Tr. 49-51.

### B. Relevant Medical Evidence[1]

In November 2015, Steward established a new patient relationship with a general practitioner. Tr. 438. He reported feeling well except for lower back pain for the last three months, which he attributed to repetitive lifting at work. Tr. 438. He stated that his pain resolved with stretching but seemed to recur. Tr. 438. Upon exam, he had a normal gait, intact sensation, a normal range of motion in his spine, and no motor deficits. Tr. 439.

In December 2015, Steward complained of back pain that had flared up a week prior. Tr. 435. A CT scan was ordered to rule out a renal stone; the test was negative for a stone but showed a mild disc bulge in his lumbar spine at L5-S1. Tr. 437.

In January 2016, Steward saw King Ogbogu, M.D., at a pain management clinic complaining of low back pain radiating down to his left heel and right thigh. Tr. 476. Upon exam, he had tenderness to palpation over the midline and paraspinal area of his lumbar spine,

---

[1] Steward only challenges the ALJ's decision with respect to his back impairment. Therefore, only evidence of his back impairment is summarized and discussed herein.

mildly reduced flexion and extension of his back, mildly reduced external rotation of his hips, and some pain with straight leg raise testing. Tr. 478. His strength was "at least 4/5 proximally however [with] poor effort." Tr. 478. Dr. Ogbogu remarked that Steward "only wiggled toes and barely moved ankle yet was able to go from sitting to standing independently and ambulate with normal gait." Tr. 478. He had intact sensation and reflexes. Tr. 478. He was diagnosed with lumbar spondylosis with mild disc bulge, no clear radicular findings and poor effort with the examination. Tr. 478.

On April 16, 2016, Steward presented to the emergency department complaining of new back pain radiating down his left leg. Tr. 459-460. He reported that he was involved in a low speed motor vehicle accident two weeks prior. Tr. 460. Upon exam, he had a full range of motion in all extremities, normal strength and reflexes, and a normal gait. Tr. 461. He had tenderness to palpation in the area of his left SI joint and a positive straight leg raise test on his right. Tr. 461. He was instructed to follow up with his primary provider. Tr. 462.

On April 26, 2016, Steward attended one session of physical therapy for low back pain. Tr. 457-459. Upon exam, he had a normal range of motion in his trunk, 4, 4+, and 5/5 muscle strength, normal reflexes, intact sensation, negative straight leg raise testing, tenderness to palpation in his paraspinal muscles, shortened flexibility in his hamstrings and quadriceps, a normal gait, normal sit-to-stand function, and his ability to lift an item from floor to waist was labored and independent. Tr. 458-459. He was assessed as having limited core/glute strength, increased lumbar lordosis, and decreased hip flexibility. Tr. 459. It was opined that he would benefit from skilled physical therapy to address these deficits and his prognosis was good. Tr. 459.

In June 2016, Steward had a follow-up visit with Krista Stanton, D.O., at the pain

management clinic, reporting that he had gone to the emergency room that morning for radiating back pain. Tr. 517. Upon exam, he had a normal gait; at least 4/5 strength, but he gave poor effort and had inconsistent give-way weakness throughout his exam; intact sensation, except burning in his heels; and he rose easily from his chair and was able to stand on toes and heels but declined to walk due to pain. Tr. 519. He had diffuse tenderness to palpation over his midline paraspinals and throughout his lower thoracic spine, lumbar spine, SI joints, hamstrings and greater trochanters. Tr. 519. He had paraspinal hypertonicity, right greater than left, and a mildly reduced range of motion in his hips. Tr. 519. Dr. Stanton commented that there was no clear evidence of radiculopathy on exam and that Steward gave poor effort throughout the exam. Tr. 519. She remarked that he had significant hamstring tightness and muscle imbalance. Tr. 519. She referred him to physical therapy and ordered an x-ray, stating that an MRI would be premature given his present symptoms and the fact that conservative treatment had not been tried. Tr. 519.

A July 2016 x-ray of Steward's lumbar spine showed no subluxation or compression, mild disc space narrowing from T-11 to L2, and mild narrowing posteriorly at L5-S1. Tr. 496.

On September 3, 2016, Steward went to an express care clinic complaining of chronic low back pain. Tr. 487. The attending physician remarked that he had not yet made an appointment with a spinal specialist or physical therapy, despite his primary care physician instructing him to do so a month prior. Tr. 487. Upon exam, he had tenderness over his bilateral low lumbar vertebrae, limited range of motion with pain, and a positive straight leg raise test. Tr. 488. He was advised to avoid heavy lifting and to follow up with his referrals as instructed. Tr. 487-488.

On September 16, 2016, Steward saw certified nurse practitioner Kelsey McCracken at

4

the Cleveland Clinic Spine Path, complaining of low back pain radiating down his legs into the bottoms of his feet. Tr. 483. He also reported intermittent tingling and stated that his legs felt like noodles when he walked. Tr. 483. He had tried a chiropractor, medications (Tramadol, Mobic, Motrin, Tylenol, Vicodin, Medrol Pak), heat/ice, and a TENS unit. Tr. 484. He had done physical therapy at a chiropractor's office two months prior, including traction, TENS, and massage. Tr. 484. He rated his pain 10/10. Tr. 484. Upon exam, he had tenderness to palpation in his thoracic and lumbar spine, lumbar paraspinals, and point tenderness over his spine; normal toe and heel walking, a normal gait, and he was able to walk tandemly; his lumbar flexion, extension, and lateral bending was limited due to pain; and he had negative straight leg raise testing. Tr. 485. He had 4/5 strength in his ankles and knees, but minimal effort and give-way weakness was noted. Tr. 485. He had mildly limited hip range of motion due to reported pain. Tr. 485. He did not react to palpation of his hip but reported 7/10 pain. Tr. 486. McCracken diagnosed chronic back pain without sciatica and chronic pain syndrome. Tr. 486. She noted that he had four positive Waddell signs[2] and stated that his exam findings and imaging findings did not correlate. Tr. 486.

In February 2017, Steward saw certified nurse practitioner Tyecia Stevens at the pain management clinic. Tr. 508. He complained of low back pain for one week after he slipped on ice and fell on his back while getting out of his car at work. Tr. 508, 511. The pain radiated down his left leg and Steward stated that it felt like a nerve. Tr. 508. Upon exam of his lumbar spine, Steward had a normal range of motion, normal lordotic curvature, tenderness at his lumbo-sacral spinal muscles, no spasms or triggers, and negative straight leg raise bilaterally. Tr. 510.

---

[2] Waddell signs are five signs indicating that a patient's low back pain is being intensified by psychological factors. The five signs are diffuse tenderness, production of pain when rotating the pelvis or shoulders, decreased pain behavior when the patient is distracted, weakness or sensory disturbance that is not limited in a normal anatomic distribution, and overreaction during the exam. *See* Dorland's Illustrated Medical Dictionary, 32nd Edition, 2012, at 1716.

He had normal reflexes, sensation, motor strength, and gait. Tr. 510. He was able to heel walk, toe walk, and tandem walk without difficulty. Tr. 510. He was diagnosed with a lumbar sprain/contusion, prescribed medication, and referred to physical therapy. Tr. 511.

In March 2017, Steward had an initial visit with physical therapy. Tr. 504. He was working full time as a mail opener, sitting most of the time, not walking or performing heavy lifting. Tr. 505. He rated his pain as 7-8/10, intermittent. Tr. 505. He drove and did some things around the house when he was not in pain. Tr. 505. He lived with his mother and sometimes she would have to help him get up from the bed. Tr. 505. Upon exam, he had minimal limitation in the range of motion of his trunk, minimum and moderate limitations in the range of motion of his hips, reduced strength in his gluteus medius and maximus and his psoas, normal reflexes, intact sensation, positive straight leg raise testing on the right, tenderness to palpation of his lumbar paraspinals, and shortened flexibility in his hip flexors, quadriceps and hamstrings. Tr. 506. His gait was unremarkable, his sit to stand was within functional limits, and he reported independently using stairs at home. Tr. 507. The therapist assessed that Steward presented with signs and symptoms of lumbar derangement and his prognosis was good. Tr. 507. His listed problems included poor body mechanics, postural deviation, and lack of home exercise program. Tr. 507.

In May 2017, Steward returned to Tyecia Stevens at the pain management clinic for a follow-up. Tr. 536-537. He reported that he was not happy with the physical therapy so he canceled his sessions and was working out on his own. Tr. 537. He was also attending classes at a local gym for stretching, which provided some improvement. Tr. 537, 539. Upon exam, he had a normal range of motion, tenderness at the lumbo-sacral spinal muscles bilaterally, negative straight leg raise testing bilaterally, and no spasm or trigger points. Tr. 539. He had intact

sensation, reflexes, and motor strength, and could heel, toe and tandem walk without difficulty. Tr. 539.

### C. New Evidence

Attached to his brief, Steward includes a correspondence from certified nurse practitioner Tyecia Stevens. Doc. 12, p. 2. The correspondence references an MRI study said to have been performed on March 19, 2018, and states, "You have a herniated disc at L5-S1 compressing the L5 nerve root. This is what's causing your pain." Doc. 12, p. 2. The findings listed include a left central disc protrusion extending through the left neural foramen, mild canal stenosis, moderate left lateral recess stenosis and slight posterior displacement of the descending L5 nerve roots, and "mild bilateral facet arthropathy and disc [sic] resulting in moderate left neural foraminal stenosis." Doc. 12, p. 3.

### D. Testimonial Evidence

#### 1. Steward's Testimony

Steward was unrepresented by counsel and testified at the administrative hearing. Tr. 41. He testified that he lives in a house with his mother. Tr. 62. He has a driver's license and drives his mother's car once or twice a week. Tr. 48. He sometimes has difficulty driving due to his back issues and sitting. Tr. 48.

Steward stated that he had a traumatic injury to his low back "years ago" at work. Tr. 54. He was working at a factory at the time feeding a machine and he "got snatched into it." Tr. 54. The machine sucked him up, injuring his left hand, and snatched his back. Tr. 55. He had a worker's compensation claim that had been resolved. Tr. 55. His back pain varied from day to day. Tr. 56. Typically, he rated his pain 6.5-7/10. Tr. 56. He takes prescription pain medication: "inflammation pills, muscle relaxers, Percocets, Motrin 800's, and Tramadols."

The medication does nothing to help his pain. Tr. 57. It just numbs him and then it wears off "and then you're back to where you started." Tr. 57. The medication takes his pain down to about a 4 or 5; he can still feel it. Tr. 57. The chiropractor put him on a stretcher and stretched him, but this didn't work either. Tr. 67. When asked if surgery was ever considered, Steward answered that one doctor recommended it and another doctor denied it. Tr. 58. Also, his left hand hurts when it is cold and it locks up; he has to play around with it to get it to release. Tr. 66. When it is cold, his hand is more painful than his back. Tr. 66-67. But, typically, his hand pain is 5-6/10. Tr. 67. The medication he takes also numbs his hand pain. Tr. 67. He can use both hands to pick things up. Tr. 68.

When asked how much weight he can lift, Steward answered that he can lift up to about 45 pounds. Tr. 58. He can walk about a half a mile before having to take a break. Tr. 58. When he is sitting down he just deals with his pain and tries to adjust his body. Tr. 58. How long he can sit at one time depends on how severe the pain is. Tr. 59. Additionally, his feet are crooked; he has been getting treatment on his feet since he was five or six. Tr. 69. He also has depression and anxiety due to life, things that he had to go through. Tr. 59. He was on mental health medication when he was a kid but is not on any now; he feels like it would help but he has had difficulty with insurance and they won't give him the medication. Tr. 60, 66. He hears voices all the time: "I am messed up." Tr. 64-65. He can control it sometimes. Tr. 65. He sometimes has panic attacks (his palms get sweaty); when asked how often, he stated once or twice a month, depending on where he is and who he is around. Tr. 70-71.

Steward cleans up around the house and goes grocery shopping with his mother. Tr. 63. He sometimes gets claustrophobic when the store is crowded but "it just all depends." Tr. 63. When asked if he could perform his two prior jobs again (parking lot attendant and baling

8

machine operator), Steward stated that he could not keep up with the production requirements as a baling machine operator, but he would love to go back to the parking lot job: "All I was doing was passing out the tickets and collecting them." Tr. 63-64. The employer would not allow him to go back to that job, however, because he has a felony conviction. Tr. 64.

### 2. Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the hearing. Tr. 71-80. The ALJ discussed with the VE Steward's past work as a parking lot attendant and baling machine operator and asked the VE to determine whether Steward could perform his past work or any other work if he had the limitations assessed in the ALJ's RFC determination. Tr. 71-75. The VE answered that such an individual could not perform Steward's past work but could perform other work in the national economy such as a dishwasher, cleaner, and groundskeeper. Tr. 75-76.

### III. Standard for Disability

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be

summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920;[3] *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the vocational factors to perform work available in the national economy. *Id.*

### IV. The ALJ's Decision

In his February 28, 2018, decision, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016. Tr. 21.

2. The claimant engaged in substantial gainful activity during the following

---

[3] The DIB and SSI regulations cited herein are generally identical. Accordingly, for convenience, further citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq. The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds to 20 C.F.R. § 416.920).

  periods: July 2016 to []March 2017.  Tr. 21.

3. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity.  The remaining findings address the period(s) the claimant did not engage in substantial gainful activity (that is, from his alleged disability onset date through June 30, 2016).  Tr. 21.

4. The claimant has the following severe impairments: lumbar spine degenerative disc disease, obesity, mood disorder with psychotic features, and anxiety related disorder.  Tr. 21.

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 22.

6. The claimant has the residual functional capacity to perform medium work, as defined in 20 CFR 404.1567(c) and 416.967(c), except he can never climb ladders, ropes or scaffolds.  He can frequently climb ramps or stairs, balance, stoop, kneel, crouch and crawl.  He is limited to simple, routine tasks with no strict time demands, no strict production quotas, only simple work instructions and decisions, and nor more than minimal or infrequent changes in the work setting.  He is further limited to occasional interaction with the public, coworkers and supervisors.  Tr. 24.

7. The claimant is unable to perform any past relevant work.  Tr. 31.

8. The claimant was born in 1979 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  Tr. 31.

9. The claimant has at least a high school education and is able to communicate in English.  Tr. 31.

10. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.  Tr. 31.

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  Tr. 31.

12. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2013 through the date of this decision.  Tr. 32.

11

**V. Law & Analysis**

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989) (per curiam) (citations omitted)). A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

Steward alleges that he has a disabling back condition. Doc. 12. He states that he has numbness and decreased sensation in his back; sharp, aching and burning pains that radiate down his legs; and muscle weakness that affects his ability to perform job duties such as standing, bending, and walking for long periods. Doc. 12, p. 1. He asserts that a typical day includes difficulty walking, standing and sitting for long periods throughout the day. Doc. 12, p. 1. "…I am in constant pain and consentient medication that limits my daily function at times." Doc. 12, p. 1. He alleges, "I endured many tests that include CAT scans, MRI, x-rays that shows damages to my nerves and vertebrate." Doc. 12, p. 1. He includes with his brief a purported MRI test result of his lumbar spine taken in March 2018. Doc. 12, pp. 2-3.

**A. The ALJ considered the evidence of record identified by Steward and the evidence supports the ALJ's decision**

The ALJ recited Steward's complaints of back pain that radiated down his legs and produced intermittent tingling. Tr. 25. The ALJ referenced Steward's hearing testimony that he

12

can lift up to 45 pounds, walk about a half a mile before resting, and that his ability to sit was impaired, although Steward could not quantify the length of time he could sit comfortably, stating, "it depends," and explaining that he has learned to "deal with" his pain. Tr. 25.

The ALJ then considered Steward's CAT scan results and x-rays of his lumbar spine, taken in December 2015 and July 2016, respectively. Tr. 26. The ALJ accurately stated that the 2015 scan showed a mild diffuse disc bulge at L5-S1, and that the 2016 x-ray showed early arthritic changes, mild disc space narrowing, and no other abnormalities. Tr. 26, 27. The ALJ found that, while the testing established that Steward had lumbar spine degeneration, "if offers little support to corroborate his allegations of a severe, persistent and limiting spinal disorder. Certainly, findings depicted as 'mild' do not generally reflect disabling spinal disorders." Tr. 26. The ALJ also commented that Steward's treatment history was conservative (medication, physical therapy) and, further, that he was not compliant with treatment because he did not pursue physical therapy per his provider's referral, which also cut against his allegations that his spinal disorder was so severe, persistent or limiting. Tr. 26, 27-28.

The ALJ also commented that Steward's objective exam findings of record support a conclusion that his impairments are not as severe as alleged. Tr. 26-27. The ALJ explained that Steward generally had benign exam findings. Tr. 26. And, although he occasionally had tenderness upon exam in his lumbar and thoracic paraspinal muscles and demonstrated decreased lumbar spine and hip range of motion, and although he infrequently exhibited positive straight leg raise testing and sporadically exhibited 4/5 lower extremity muscle strength, the examining providers in these instances "noticed that he 'showed minimal effort and giveaway weakness'"; had superficial non-anatomic tenderness and overreactions; four positive Waddell signs; and no clear evidence of radiculopathy given his poor clinical exam efforts. Tr. 26.

13

In short, the ALJ considered the evidence that Steward identifies in his brief and this evidence supports the ALJ's determination that Steward's impairments were not disabling. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (the Commissioner's decision is upheld so long as substantial evidence supports the ALJ's conclusion).

### B. Steward is not entitled to a remand for consideration of the March 2018 MRI

Steward's March 2018 MRI report that he attaches to his brief post-dates the ALJ's decision. Therefore, this evidence was not presented to the ALJ. When, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's final decision, the court's review is limited to the evidence presented to the ALJ. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Accordingly, the Court cannot consider Steward's March 2018 MRI when reviewing the ALJ's decision.

However, a court can consider evidence that was not submitted to the ALJ when determining whether a sentence six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster*, 279 F.3d at 357. Sentence six of 42 U.S.C. § 405(g) allows a court to remand to the agency to develop additional evidence in the record, "but only upon a showing that there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding." *Bass*, 499 F.3d at 513 (quoting § 405(g)). Because Steward submits new evidence to the Court, the undersigned construes his brief as arguing that a sentence six remand is appropriate in this case.

In a sentence six remand, the plaintiff has the burden to demonstrate that the evidence he now presents in support of a remand is "new" and "material" and that there was "good cause" for his failure to present it in the prior proceedings. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006); *see also Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269,

276 (6th Cir. 2010) (although the evidence that the claimant sought to introduce was "new," the claimant failed to meet her burden of showing "good cause" for failure to submit it and that the evidence was "material."). Evidence is new "only if it was not in existence or available to the claimant at the time of the administrative proceeding"; material "only if there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence"; and a claimant shows good cause "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id*. (quoting *Foster*, 279 F.3d at 357 (internal quotations omitted)).

Here, Steward's March 19, 2018, MRI post-dates the July 11, 2017, hearing and the ALJ's February 28, 2018, decision. In fact, it post-dates the last treatment note in the record (May 1, 2017) by almost one year. There is no evidence indicating what occurred in the time between May 2017 and the March 2018 MRI. Thus, at best, the March 2018 MRI showing a disc protrusion extending through the left neural foramen at L5-S1 is evidence of a worsening condition. But a sentence six remand is not appropriate to consider evidence that a claimant's condition worsened after the administrative hearing. *Walton v. Astrue*, 773 F. Supp. 2d 742, 753 (N.D. Ohio Jan. 18, 2011) (citing *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992)). If Steward's condition worsened after the administrative hearing, the appropriate remedy would be to initiate a new claim for benefits as of the date that his condition rose to the level of a disabling impairment. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988). Accordingly, based on the foregoing, Steward is not entitled to a sentence six remand for the purpose of considering additional evidence not submitted to the ALJ.

## VI. Conclusion

For the reasons set forth herein, the undersigned recommends that the Commissioner's

decision be **AFFIRMED**.

Dated: January 8, 2020

          */s/ Kathleen B. Burke*
          Kathleen B. Burke
          United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).